UNITED STATES v. COUDERT.

(Circuit Court of Appeals, Second Circuit. April 6, 1896.)

1. CIRCUIT COURT OF APPEALS—JURISDICTION—TUCKER ACT.
  The circuit court of appeals has jurisdiction to review, on writ of error, a judgment rendered by the circuit court in an action against the United States, brought under the Tucker act of March 3, 1887 (24 Stat. 505).

2. ADMIRALTY—SALE OF VESSEL—LIABILITY FOR PROCEEDS.
  Where a vessel and cargo are sold by order of the district court, in admiralty, and the proceeds deposited, in lieu of such vessel and cargo, not in the treasury of the United States, but in a bank, subject to the order of the court, the government is not responsible for any loss or diminution of the fund; and a decree for the restitution of the vessel and cargo to the owner carries only what may remain of the fund, and imposes no liability upon the government for any part of it which may have been lost.

Joseph King, for petitioner.

Wallace Macfarlane, U. S. Dist. Atty.

Before PECKHAM, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. Charles Coudert, as ancillary executor of Rafael Madrazo, brought a petition against the United States in the circuit court of the United States for the Southern district of New York, under the act of March 3, 1887 (24 Stat. 505), known as the "Tucker Act," to recover a sum of money alleged to be due to the testator's estate from the United States. The writ of error to this court was brought to review the judgment of the circuit court in favor of the petitioner.

The following statement of the facts, upon which the claim was based, is admitted to be substantially correct: In November, 1863, the United States vessel Granite City seized the Spanish bark Teresita, then the property of Rafael Madrazo, in the Gulf of Mexico, as a blockade runner, and brought the Teresita to New Orleans for condemnation for alleged violation of the blockade by the military and naval power of the United States over the entrance to the Rio Grande river. Legal proceedings for condemnation and forfeiture of the vessel as a prize were duly begun in the district court for

the Eastern district of Louisiana. During the progress of the condemnation proceedings and by virtue of an order of the district court for the Eastern district of Louisiana, dated August 23, 1864, rendered in a suit in admiralty for the condemnation and forfeiture of said vessel and her cargo, which was commenced in said court on December 16, 1863, and in which the United States of America were libelants, the said bark and her cargo were sold by the United States marshal for the Eastern district of Louisiana. The proceeds of such sale, amounting to $10,359.20, after deducting costs and other charges, were deposited by the marshal in the First National Bank of New Orleans, then a special or designated depositary of public moneys of the United States, to await the further orders of the court. The district court thereafter decided in favor of the claimant against the United States. The United States appealed to the supreme court of the United States, obtaining a supersedeas pending the appeal. At the December term of the supreme court in 1866 a decision was rendered affirming the decree of the district court in favor of the claimant and against the United States, and restitution of the vessel and cargo was directed. The Teresita, 5 Wall. 180. Pending the appeal, the First National Bank of New Orleans, in which the proceeds of the sale of the Teresita had been deposited, failed, and was placed in the hands of a receiver pursuant to law. Thereafter, in liquidating the affairs of the bank, the receiver paid to Madrazo, during his lifetime, and to his representatives after his death, dividends amounting in all to $8,183.77. The first payment was made on May 1, 1871, and the last on September 28, 1882. Madrazo died in Cuba on the 14th day of April, 1877, and on the 20th day of September, 1888, ancillary letters of administration were issued in the county of New York to the defendant in error. The receiver of the bank had no further assets in his hands applicable to the payment of this claim after the payment of September 28, 1882, and the petition in this suit was filed on September 24, 1888, to recover a sum equal to the balance of the proceeds of the sale of the Teresita, after deducting the payments made by the receiver of the bank; that is to say, for the sum of $2,175.43. The circuit court awarded judgment to the petitioner, with interest from the 28th day of September, 1882.

It manifestly appears that the questions were so presented to the circuit court that the disposition of the case was considered to be a matter of routine. The theory of the petitioner is that, inasmuch as the final decree in the prize case directed the government to make restitution of the Teresita and her cargo, and as the decree has not been fully complied with, a claim sounding in contract has arisen out of said decree in favor of the decedent and his estate against the government. This theory omits consideration of the facts that the vessel and her cargo were sold by order of the district court, that the proceeds of such sale remained subject to its order in lieu of the vessel and cargo, that the fund was not deposited in the treasury of the United States, and that the government is not responsible for its diminution. A similar claim against the United States, arising out of the failure of a bank in which the proceeds from the

sale of cotton seized under the confiscation act had been deposited, was examined by the supreme court in Branch v. U. S., 100 U. S. 673. The suit for condemnation of the cotton had been dismissed, and judgment had been entered for the defendants, who thereupon brought suit against the United States to recover the unpaid amount of the original deposit. The supreme court held that the money which had been deposited belonged for the time to the district court as a trust fund, that it was not paid into the treasury, and that, therefore, the claimant was not entitled to recover. In this case also, the entire proceedings in regard to the sale of vessels and cargo and their proceeds having been taken by the district court, the government is not responsible any more than was the petitioner or the decedent for any calamity to the fund. The decree of restitution of the vessel and cargo was a decree for whatever remained of the fund which was a substitute for the vessel and cargo.

The petitioner insists that no writ of error lies to this court from the judgment of the circuit court in an action brought against the government of the United States under the provisions of the act of March 3, 1887. It was settled in U. S. v. Davis, 131 U. S. 36, 9 Sup. Ct. 657, that an appeal or writ of error lay to the supreme court from a judgment against the United States rendered under the jurisdiction conferred upon district or circuit courts by that act; and the contention of the petitioner is that, as the Tucker act alone furnishes the district or circuit courts with jurisdiction to entertain actions against the United States, it alone controls the right of appeal or review. The act of March 3, 1891, was intended to be a comprehensive statute, which should regulate the jurisdiction of the supreme court by appeal or writ of error from the district and circuit courts. The fifth section provides six classes of cases in which appeals or writs of error may be taken directly to the supreme court from those courts, and which do not include cases arising therein under the act of March 3, 1887; section 6 provides that the circuit courts of appeals shall exercise appellate jurisdiction to review final decisions in the district and existing circuit courts in all cases other than those provided in the fifth section, unless otherwise provided by law; and section 14 provides that "all acts and parts of acts relating to appeals or writs of error inconsistent with the provisions for review by appeals or writs of error in the preceding sections five and six of this act" are repealed. The supreme court, in Lau Ow Bew v. U. S., 144 U. S. 47, 12 Sup. Ct. 517, has shown that the words of section 6, "unless otherwise provided by law," were not intended to limit the effect of the general repealing-provisions of section 14, but "were manifestly inserted out of abundant caution, in order that any qualification of the jurisdiction by contemporaneous or subsequent acts should not be construed as taking it away, except when expressly so provided. Implied repeals were intended to be thereby guarded against. To hold that the words referred to prior laws would defeat the purpose of the act, and be inconsistent with its context and its repealing clause." Immediately after the passage of the act of March 3, 1891, some uncertainty existed in the minds of learned counsel as to which court an appeal

or writ of error should be taken in cases arising under the Tucker act, but this uncertainty has disappeared. The judgment of the circuit court is reversed.